# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DEBORAH K. NICHOLS,<br>an Individual,<br><br>    Plaintiff,<br><br>vs.<br><br>WILLIAM SCHANK,<br>an Individual and Chief of<br>Kimball Police Department, and<br>SHARON LEWIS,<br>an Individual and Officer of the Kimball<br>Police Department,<br><br>    Defendants. | )<br>)<br>)<br>)  7:05CV5020<br>)<br>)  ORDER<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

  This matter is before the court on the plaintiff's Motion for Summary Judgment (Filing No. 26) and the defendants' Motion for Summary Judgment (Filing No. 32). The plaintiff filed a brief (Filing No. 27), an index of evidence (Filing No. 28) in support of her motion, and a brief (Filing No. 37) in opposition to the defendants' motion. The defendants filed a brief (Filing No. 34) and an index of evidence (Filing No. 33), in support of their motion and in opposition to the plaintiff's motion.

## INTRODUCTION

  On July 26, 2005, the plaintiff filed a complaint in the District Court of Kimball County, Nebraska. **See** Filing No. 1, Ex. 1. Pursuant to 28 U.S.C. § 1441, the case was removed to the United States District Court for the District of Nebraska. **See** Filing No. 1. The plaintiff alleges the defendants violated her Constitutional rights, giving rise to a civil lawsuit under 42 U.S.C. § 1983, when she was arrested in April, 2005. **See** Filing No. 1, ¶ 5. Specifically, the plaintiff alleges the defendants' conduct interfered with the plaintiff's liberty interest; right to counsel; right to be free from unlawful arrest and detention; right to be free from threats and coercion; right to substantive due process; right to remain silent; right to procedural due process; right to be free from search and seizure; and right to free

speech (Claim I).  **See** Filing No. 6, p. 22 (Second Amended Complaint ¶ 38).  The plaintiff also alleges the defendants engaged in tortious interference with her business relationship with her landlord (Claim II).  **See** Filing No. 6, p. 23 (Second Amended Complaint ¶ 45). The court has subject matter jurisdiction under 28 U.S.C. § 1331, as the matter arises under a federal question. Pursuant to 28 U.S.C. § 636 and the consent of the parties, the undersigned magistrate judge is specially designated to exercise jurisdiction over this matter.  **See** Filing No. 11.

The plaintiff seeks summary judgment on the issue of liability against both defendants.  **See** Filing No. 26.  The plaintiff contends she was unlawfully arrested and prosecuted in violation of her constitutional rights because she refused to consent to a warrantless search of her residence on April 13-14, 2005.  In response to the defendants' motion for summary judgment, the plaintiff argues the defendants' motion should be limited to the issue of qualified immunity because no deadline had yet been set for general motions for summary judgment.  The plaintiff had ample opportunity to respond to the defendants' motion and it will not be limited to the issue of qualified immunity.  **See** Fed. R. Civ. P. 56(b).

In contrast, the defendants contend the plaintiff was lawfully arrested for harboring a fugitive, false reporting and failing to cooperate with a police officer.  On this basis, the defendants seek summary judgment on all of the plaintiff's claims.  **See** Filing No. 32. Specifically, the defendants assert that since the plaintiff's arrest was based on probable cause her civil rights claims are precluded.  Additionally, the defendants contend they are shielded from liability based on qualified immunity.  Finally, the defendants argue the plaintiff's claims are without merit.

## UNCONTROVERTED FACTS

On April, 13, 2005, the plaintiff was the manager of the Beef and Brunch Restaurant (the Restaurant) in Kimball, Nebraska, and resided in an apartment beneath the Restaurant.  **See** Filing No. 28, Exhibit 4 ¶ 8 (Nichols' Affidavit).  At approximately 10:45 p.m., the defendant Sharon Lewis (Officer Lewis), an officer of the Kimball Police Department, saw a man who she "was absolutely certain" was Marvin Stahla (Stahla) leave

from, then return to, the plaintiff's residence at the Restaurant. **See** Filing No. 33, Exhibit 9 at p. 1-4 (Suppression Hearing Transcript). Officer Lewis was familiar with Stahla through the course of her employment, including several face-to-face contacts over four years. *Id.* at p. 2. Stahla was wanted on an arrest warrant. *Id.* at p. 4.

Soon after Officer Lewis saw Stahla, the plaintiff exited the residence and repeatedly told Officer Lewis to leave the premises. **See** Filing No. 28, Exhibit 4, ¶¶ 14-15 (Nichols' Aff.). Officer Lewis told the plaintiff to have Stahla come outside or else the plaintiff would be arrested. **See** Filing No. 33, Exhibit 9 at p. 5. The plaintiff denied that Stahla was inside the residence and went back inside. *Id.* at p. 6. The plaintiff and another female left the residence and the plaintiff got inside a van. *Id.* at p. 6-7. Officer Lewis blocked the van with her patrol vehicle. *Id.* at p. 7. The plaintiff got out of the van and walked around the First Interstate Inn, which is located north of the Restaurant and shares a parking lot. *Id.* at p. 3 and 7.

Back-up officers arrived on the scene, including the defendant Bill Schank (Chief Schank), Chief of Police. Chief Schank spoke to Officer Lewis who described what she saw. *Id.* at p. 36. Chief Schank then went to the First Interstate Inn to talk the plaintiff into consenting to a search of the Restaurant. *Id.* The plaintiff denied Stahla was present and refused to consent to a search. *Id.* at p. 36-38. The plaintiff was placed under arrest and transported to the courthouse. *Id.* at p. 36. The officers later obtained a search warrant and searched the Restaurant building. *Id.* at p. 9-12, 41-42. The officers did not find Stahla, but did find Stahla's luggage and some men's clothes. *Id.*

On July 12, 2002, the plaintiff was formally charged in Kimball County Court with Obstructing a Peace Officer. On March 21, 2006, the Honorable G. Glenn Camerer, County Judge, overruled a motion to suppress the evidence discovered when the search warrant was executed. Judge Camerer stated:

> In reviewing the affidavit utilized by the Clerk Magistrate of Kimball County, Nebraska, it is clear that probable cause existed for the issuance of a search warrant. The Court finds the affidavit established probable cause for the search warrant and the search warrant was properly issued and executed.

Filing No. 33, Exhibit 11, p. 53 - Certified copy of Kimball County Court file.

**LEGAL STANDARD**

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." **See** Fed. R. Civ. P. 56(c); *Nat'l Am. Ins. Co. v. W & G, Inc.*, 439 F.3d 943, 945 (8th Cir. 2006). When making this determination, a court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, a court must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 853 (8th Cir. 2003) (**quoting** *Anderson*, 477 U.S. at 248). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Additionally, Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**See** Fed. R. Civ. P. 56(e). A party seeking summary judgment bears the burden of informing a court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (**quoting** Fed. R. Civ. P. 56(c)); *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006). In the face of a properly supported motion, the

burden then shifts to the nonmoving party to "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); **Murphy v. Missouri Dep't of Corr.**, 372 F.3d 979, 982 (8th Cir. 2004). A motion for summary judgment places an affirmative burden on the non-moving party to go beyond the pleadings and, by affidavit or otherwise, produce specific facts that show that there is a genuine issue for trial. **See** Fed. R. Civ. P. 56(e); **Janis v. Biesheuvel**, 428 F.3d 795, 799 (8th Cir. 2005)

Under this court's local rules:

> The moving party shall set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law.

**See** NECivR 56.1(a)(1).

Additionally:

> The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts. The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response.

**See** NECivR 56.1(b)(1).

## ANALYSIS

### A.   Civil Rights - Qualified Immunity

Qualified immunity shields government officials from liability, in their individual capacity, "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." **Harlow v. Fitzgerald**, 457 U.S. 800, 818 (1982). Furthermore, "qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." **Malley v. Briggs**, 475 U.S. 335, 341 (1986). For a civil rights plaintiff to survive a motion

for summary judgment on qualified immunity grounds, "a plaintiff must assert a violation of a constitutional right, show that this right is clearly established, and raise an issue of material fact as to whether the defendant would have known that the conduct in question violated the clearly established right." **Biby v. Board of Regents, of Univ. of Nebraska at Lincoln**, 419 F.3d 845, 850 (8th Cir. 2005).

The plaintiff alleges she was exercising her Constitutional rights under the Fourth Amendment when she refused to open her residence despite threats being made. **See** Filing No. 6, p. 20 (Second Amended Complaint ¶ 16). Additionally, the plaintiff claims she was unlawfully arrested, detained and searched for refusing to consent to a search of her residence. *Id.* Further, the plaintiff argues there was no probable cause for her arrest on the charge of obstructing a police officer, harboring a fugitive or providing false information. As evidence, the plaintiff states she did not "obstruct" or block the officers' search for Stahla, she merely left the premises and refused to consent to a search. Additionally, the plaintiff shows the charges of harboring a fugitive and false information were later dropped.

The issue before the court is not whether the plaintiff was unlawfully arrested for her refusal to consent, but whether she was unlawfully arrested. The plaintiff alleges that she was arrested and/or detained when Officer Lewis prevented the plaintiff from driving away in her van and when she was formally arrested by Chief Schank at the hotel.

"In connection to a Fourth Amendment false arrest claim, the relevant inquiry is whether the officers had probable cause to arrest." **Smithson v. Aldrich**, 235 F.3d 1058 (8th Cir. 2000). "[T]he issue for immunity purposes is not probable cause in fact but arguable probable cause." **Habiger v. City of Fargo**, 80 F.3d 289, 295 (8th Cir. 1996) (citation omitted). "Therefore, law enforcement officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so-provided that the mistake is objectively reasonable." **Smithson**, 235 F.3d at 1062 (**citing** *Hunter v. Bryant*, 502 U.S. 224, 228-29 (1991)).

> To determine the existence of probable cause, we look at the totality of the circumstances as set forth in the information available to the officers at the time of arrest. Probable cause exists when the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed.

***Engesser v. Dooley***, 457 F.3d 731, 739-40 (8th Cir. 2006) (internal citations omitted).

By the time of either arrest or detention, Officer Lewis saw or thought she saw Stahla enter the residence. While the plaintiff does attempt to attack the defendants' credibility, she does not dispute the essential facts that Officer Lewis saw or thought she saw Stahla and that Chief Schank reasonably believed Officer Lewis. However, the plaintiff had told officers that Stahla, a fugitive, was not present in the residence and had screamed at Officer Lewis and told her to leave the premises. **See** Filing No. 28, Exhibit 4, ¶¶ 14-15 (Nichols' Aff.); Filing No. 33, Exhibit 9 at p. 5, 8. Accordingly, regardless of whether the plaintiff refused consent to search the premises, there was probable cause to believe that the plaintiff was harboring a fugitive, in violation of Neb. Rev. Stat. § 28-204(1)(a):

> A person is guilty of being an accessory to felony if with intent to interfere with, hinder, delay, or prevent the discovery, apprehension, prosecution, conviction, or punishment of another for an offense, he or she: (a) Harbors or conceals the other . . .

Additionally, regardless of whether the plaintiff refused consent to search the premises, the plaintiff's conduct provided probable cause to believe she had committed the offense of false reporting in violation of Neb. Rev. Stat. § 28-907(1)(a), which provides:

> A person commits the offense of false reporting if he or she: (a) Furnishes material information he or she knows to be false to any peace officer or other official with the intent to instigate an investigation of an alleged criminal matter or to impede the investigation of an actual criminal matter . . .

In a factually similar case, the Eighth Circuit Court of Appeals determined probable cause existed for arrest where an individual physically blocked an entrance to a residence and told officers the subject of an arrest warrant was not inside. ***Ward v. Moore***, 414 F.3d 968, 971-72 (8th Cir. 2005). In ***Ward***, the officers had seen the subject of the arrest warrant enter the residence. ***Id.*** The plaintiff attempts to distinguish ***Ward*** because the plaintiff did not physically block the entrance to the Restaurant. However, the plaintiff did tell the officers Stahla was not inside, after an officer ostensibly observed his entrance.

The fact that the officers in this case did not locate Stahla in the Restaurant is not dispositive of the probable cause issue. As stated above, the court must evaluate the

totality of the circumstances based on the information available to the officers at the time of arrest. ***Engesser***, 457 F.3d at 740. The analysis does not change if it turns out the officers were mistaken about the factual basis for probable cause. ***Lawyer v. City of Council Bluffs***, 361 F.3d 1099, 1104 (8th Cir. 2004) ("Once it is accepted that [the officer] reasonably thought he saw a marijuana pipe in the red pouch, then there was probable cause to search the pouch, even though [the officer] turned out to be mistaken."); **see, e.g.**, ***Hill v. California***, 401 U.S. 797 (1971) (finding no cause of action under § 1983 where plaintiff was arrested due to mistaken identity). Because the officers reasonably believed the plaintiff's conduct, aside from her refusal to consent to search, violated one or more state criminal statutes, the plaintiff's arrest did not violate the Fourth Amendment.

The plaintiff's remaining civil rights claims are merely a restatement of her unlawful arrest claim. The plaintiff submitted no additional factual or legal support for the claims. In short, the plaintiff has failed to show any disputed material fact precluding summary judgment on her claims for a violation of a liberty interest; right to counsel; right to be free from threats and coercion; right to substantive due process; right to remain silent; right to procedural due process; right to be free from search and seizure; and right to free speech because the plaintiff fails to establish facts which indicate her rights were violated. **See** ***Smithson v. Aldrich***, 235 F.3d 1058 (8th Cir. 2000) (analyzing false arrest claim with claims for violation of First Amendment and due process).

Because the plaintiff failed to establish any disputed material fact about whether the defendants' conduct violated any of her constitutional rights and because the uncontroverted facts fail to support such a claim, the defendants are entitled to qualified immunity, in their individual capacities, on the plaintiff's § 1983 claims. Furthermore, the plaintiff alleges no claims against the defendants in their official capacities. **See** Filing No. 6, p. 22 - Second Amended Complaint ¶ 32 ("all of the defendants' conduct was that of a public official in an individual capacity."). Thus, the plaintiff's motion for summary judgment must be denied and the defendants' motion granted with regard to Claim I.

### B.     Tortious Interference

The plaintiff alleges the defendant Chief Schank interfered with her business relationship with her landlord by "conducting a one-sided investigation, unlawfully arresting Ms. Nichols, and threatening interference with her landlord."  **See** Filing No. 6, p. 23 (Second Amended Complaint ¶ 45).  Specifically, the plaintiff alleges that after the plaintiff's arrest, Chief Schank stated, "you may run that restaurant today, but I will see to it that you don't run it tomorrow."  *Id.* at p. 20 (Second Amended Complaint ¶ 18).

The defendants contend the plaintiff failed to bring this claim under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 to 13-926, and failed to allege compliance with the Act in terms of providing notice of her claim.  "The filing or presentment of a claim under the [Political Subdivisions Tort Claims] Act is a condition precedent to commencement of a negligence action against a political subdivision." ***Polinski v. Omaha Public Power Dist.***, 554 N.W.2d 636, 639 (Neb. 1996) (**cited by** ***Shrum v. Kluck***, 85 F. Supp. 2d 950, 954 (D. Neb. 2000)).  However, the defendants did not raise noncompliance with the notice requirement as an affirmative defense and therefore the court cannot grant their motion for summary judgment on this basis.  **See** ***Big Crow v. City of Rushville***, 669 N.W.2d 63 (2003).

The defendants also argue the plaintiff's claim is meritless and the plaintiff states her claim for tortious interference only as a restatement of her claim for unlawful arrest.  The plaintiff provides no factual or legal support for her tortious interference claim in response to the defendants' motion for summary judgment.  Under Nebraska law, the elements of tortious interference with a business relationship or expectation are:

> (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.

***Macke v. Pierce***, 661 N.W.2d 313, 317 (Neb. 2003).  While there can be little dispute the plaintiff has met the first two elements, the plaintiff has failed to show any unjustified intentional act of interference, harm or damages.  Accordingly, the defendants' motion for

summary judgment on the plaintiff's claim for tortious interference must be granted. Upon consideration,

**IT IS ORDERED:**

1. The plaintiff's Motion for Summary Judgment (Filing No. 26) is denied.
2. The defendants' Motion for Summary Judgment (Filing No. 32) is granted.
3. Pursuant to Fed. R. Civ. P. 58, a separate judgment will be entered on this date in accordance with this Order and the Order dated October 19, 2005.

DATED this 11th day of October, 2006.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge